Betty G. BROWNING

v.

**CLERK, U.S. HOUSE OF REPRESENTATIVES, et al., Appellants.**

No. 85–5144.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 8, 1986.

Decided April 25, 1986.

Rehearing En Banc Denied July 8, 1986.

Steven R. Ross, with whom Charles Tiefer, Washington, D.C., was on brief, for appellants.

Linda Huber, Washington, D.C., for appellee.

Before WALD and SILBERMAN, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge MacKINNON.

MacKINNON, Senior Circuit Judge:

Browning, the first black Official Reporter employed by the United States House of Representatives, was discharged after seven years for gross errors and omissions in a particular committee reporting assignment and generally for the low quality of her reporting. Browning admitted these errors below,[1] but alleged that the true reason behind her dismissal was racial animus, that the reasons given were pretextual, and that her discharge violated her rights under the equal protection/due process protections of the Fifth Amendment. The congressional defendants[2] moved to dismiss the suit asserting, *inter alia*, that Browning's claim was nonjusticiable under the immunity guaranteed by the Speech or Debate Clause of Article I.[3]

The district court, claiming reliance upon this court's decision in *Walker v. Jones*, 733 F.2d 923 (D.C.Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984), ruled that the Speech or Debate Clause did not shield congressional personnel actions affecting Official Reporters from judicial scrutiny. Because we find that the district court misapplied this court's holding in *Walker* and that the Speech or Debate Clause does shield this congressional personnel action from judicial scrutiny, we reverse the district court and remand with instructions to dismiss Browning's suit.

## I. BACKGROUND

This case comes to us on appeal from the district court's denial of a motion to dismiss for lack of subject matter jurisdiction. For purposes of this review, therefore, we must assume the truth of Browning's allegations. Moreover, as the Supreme Court has instructed, "the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

Browning was employed by the United States House of Representatives as an Official Reporter from August 1974 until October 1, 1981. Complaint ¶ 7 (Joint Appendix ("JA") 5). While an Official Reporter, Browning's direct supervisor was appellant Geraldine Lyda, the Director of the Office of Official Reporters for the House of Representatives, who in turn was supervised by the Assistant to the Clerk of the House of Representatives, appellant Thomas Ladd. Overall responsibility for the administrative affairs of the House of Representatives rested with the Clerk of the House of Representatives, appellant Edmund L. Henshaw, who in turn was responsible to the appellant Speaker of the House of Representatives, the Honorable Thomas P. O'Neill. All such congressional personnel were named as defendants.

Browning was the first black person hired by the House of Representatives as an Official Reporter and was the only black Official Reporter during her tenure. Complaint ¶ 7 (JA 5). Her duties as an Official Reporter entailed primarily the verbatim stenotype transcription of committee and subcommittee hearings. Affidavit of Betty

---

1. Browning Affidavit ¶ 8 (JA 16).

2. The congressional appellants are Geraldine Lyda, the Director of the Office of Official Reporters for the House of Representatives; her supervisor, the Assistant to the Clerk of the House of Representatives, appellant Thomas Ladd; the Clerk of the House of Representatives, appellant Edmund L. Henshaw; and the Speaker of the House of Representatives, the Honorable Thomas P. O'Neill.

3. United States Constitution, Art. 1, Sec. 6, Clause 2 provides:

 ... for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place.

G. Browning ¶ 2 (JA 13). Browning alleges that she carried out her duties diligently and competently, although at the same time admitting incidents of poor performance.[4] Browning alleges that her termination was motivated by racial animus, Browning Affidavit ¶ 10 (JA 17), and that appellant Lyda engaged in a "campaign of hostility" against Browning that was racially motivated. *Id.* ¶ 5 (JA 14). For example, Browning alleges that Lyda would often assign her to cover hearings that would produce little testimony, and then complain of Browning's low production. *Id.* ¶ 6 (JA 15). Other alleged incidents include one in which Lyda made cruel and derogatory remarks about Browning in the presence of her coworkers. *Id.* Lyda also allegedly solicited complaints regarding Browning's performance, but would not permit Browning to examine these complaints or rebut them. *Id.* ¶ 7 (JA 15–16).

Browning further asserts that Lyda was able to enlist the aid of defendants Ladd and Henshaw in discharging Browning. Both Ladd and Henshaw, in communications with Browning, refer to a particular incident where her performance was poor, but Browning alleges that this incident was a mere pretext for her discharge. Browning Affidavit ¶ 10 (JA 17). A disciplinary warning from Ladd describes this incident as follows:

> In addition to these problems associated with the manner and quality of the reporting you perform for the Clerk, your record of page production is consistently the lowest of the reporting corps.

> The most recent incident concerns your failure to accurately and thoroughly report a committee hearing of the Subcommittee on Oversight and Investigations, Committee on Interstate and Foreign Commerce, on Involvement of Organized Crime in the Hazardous Waste Disposal Industry, December 16, 1980. By letter from the Chairman, we were advised that large gaps existed in the transcript, in some cases comprising omissions of whole paragraphs of testimony. Testimony during this hearing was taken under oath to insure veracity and for possible use in judicial proceedings in the event that responses by witnesses were determined to be false or perjurious. The subsequent release and review of the tape-recorded version of the hearing has revealed gross errors and omissions and has resulted in embarrassment to this office, as the supervisory office for official reporters, and to the U.S. House of Representatives. The failure to provide an accurate transcription of the hearing to the committee has damaged the investigative process of the subcommittee and may subject the subcommittee and/or House to possible legal action.

Browning admits these errors, but denies their significance. Browning Affidavit ¶ 8 (JA 16). Finally, Browning alleges that the Speaker of the House of Representatives participated in her discharge in that he "permitted and authorized the other defendants, over whom he had supervisory authority, to engage in the discriminatory conduct complained of ... and refused to take corrective action when the wrongful conduct was brought to his attention." Complaint ¶ 13 (JA 6–7).

In the district court, the congressional defendants moved to have the complaint dismissed under Rules 12(b)(1), (2), and (6) of the Federal Rules of Civil Procedure.[5]

---

**4.** Browning asserted that as a general matter she "diligently and competently carried out her assigned tasks...." Browning Affidavit ¶ 8. She also admits, however, that on several occasions her performance was poor, which she sought to excuse because these incidents "occurr[ed] at a time of extreme difficulties in her family ...," Complaint ¶ 11, and while she was "under great stress...." Browning Affidavit ¶ 8. The significance of these facts rests with their importance in demonstrating that the focus of a trial on the merits would concern Browning's performance *as it touches the legislative process.*

**5.** In addition to their assertion of Speech or Debate Clause immunity, the defendants raised claims of official immunity, judicial restraint/separation-of-powers, and failure to state a claim upon which relief can be granted. *See* House Defendants' Motion to Dismiss and Memorandum of Points and Authorities in Support of House Defendants' Motion to Dismiss, No. 84–1637 (D.D.C. filed Aug. 10, 1984).

The district court, claiming reliance upon this court's decision in *Walker v. Jones*, 733 F.2d 923 (D.C.Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984), denied the motion. *See Browning v. Clerk, U.S. House of Representatives*, No. 84–1637 (D.D.C. filed Dec. 17, 1984). The congressional defendants then immediately brought this appeal.[6]

## II. ANALYSIS

This case presents the question of the proper scope of the immunity guaranteed by the Speech or Debate Clause in the context of congressional personnel decisions.[7] Although our analysis is informed by this court's recent decision in *Walker v. Jones*, the instant appeal concerns activities within the legislative core. We approach our task with some caution in light of the importance of the Speech or Debate Clause to the separation of powers which is central to our constitutional form of government.

### A.

The Speech or Debate Clause provides that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." U.S. Const. art. I, § 6, cl. 1. The relatively short judicial history of this clause has witnessed considerable interpretation as Congress has changed the way in which it performs its duties. Although the literal scope of this clause is limited, it is well-settled that the clause protects more than simply speeches and debates by Representatives and Senators on the floors and in the committees of the Congress. For example, the Supreme Court has held that the clause protects all "things generally done in a session of the House by one of its members in relation to the business before it." *Kilbourn v. Thompson*, 13 Otto 168, 103 U.S. 168, 204, 20 L.Ed. 377 (1881). It is equally clear that the clause protects Members' aides or assistants insofar as their conduct would be protected if performed by the Member himself. *See Gravel v. United States*, 408 U.S. 606, 618, 92 S.Ct. 2614, 2623, 33 L.Ed.2d 583 (1972).

Congressional personnel decisions present difficult questions of Speech or Debate Clause immunity because the congressional action at issue may be slightly removed from the direct legislative process. In construing the Speech or Debate Clause in this context, we are mindful of James Madison's advice that "[i]n the application of the [Speech or Debate Clause] to emerging cases ... the reason and necessity of the privilege must be the guide." 4 Writings of James Madison 221 (1865). Thus, we employ a functional approach to interpreting the Speech or Debate Clause, being further influenced by the view that the clause "ought not be to construed strictly, but liberally, that the full design of it may

6. Although the district court has not entered final judgment in this case, this appeal was nevertheless properly taken under 28 U.S.C. § 1291 (1982). Issues of Speech or Debate Clause immunity may be immediately appealed. *See Helstoski v. Meanor*, 442 U.S. 500, 506, 99 S.Ct. 2445, 2448, 61 L.Ed.2d 30 (1979). The rationale underlying this rule is that the Speech or Debate Clause was intended not only to protect legislators from liability, but also to protect them from the time-consuming burden of defending their actions in court and diverting their efforts from their congressional duties. In *Tenney v. Brandhove*, 341 U.S. 367, 377, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951), concerning a state legislator's immunity from suit under the federal civil rights law granting a damage remedy for violation of a person's civil rights, the Supreme Court stated:

Legislators are immune from deterrents to the uninhibited discharge of their legislative duty,

not for their private indulgence but for the public good. One must not expect uncommon courage even in legislators. The privilege would be of little value if they could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motive.

*Tenney v. Brandhove*, 341 U.S. 367, 377, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951). *See Helstoski*, 442 U.S. at 507–08, 99 S.Ct. at 2448–49.

7. Because we decide that the district court should have dismissed this lawsuit upon Speech or Debate Clause grounds, we need not reach the other issues raised in this appeal, *viz.,* official immunity, judicial restraint/separation-of-powers, and failure to state a claim, *see supra* note 5.

be answered." *Coffin v. Coffin*, 4 Mass. 1 (1808), *quoted in Kilbourn*, 13 Otto 168, 103 U.S. at 203. *See United States v. Johnson*, 383 U.S. 169, 180, 86 S.Ct. 749, 755, 15 L.Ed.2d 681 (1966); *McSurely v. McClellan*, 553 F.2d 1277, 1284 (D.C.Cir. 1976), *cert. dismissed*, 438 U.S. 189, 98 S.Ct. 3116, 57 L.Ed.2d 704 (1978).

■■■ The Speech or Debate Clause is intended to protect the integrity of the legislative process by restraining the judiciary and the executive from questioning legislative actions.[8] *United States v. Brewster*, 408 U.S. 501, 507, 92 S.Ct. 2531, 2535, 33 L.Ed.2d 507 (1972). In so shielding the legislative branch from judicial scrutiny, the clause seeks to protect legislators "not only from the consequences of litigation's results, but also from the burden of defending themselves." *Dombrowski v. Eastland*, 387 U.S. 82, 85, 87 S.Ct. 1425, 1427, 18 L.Ed.2d 577 (1967).[9] Without this protection legislators would be both inhibited in and distracted from the performance of their constitutional duties.

Both of these interests are embodied in the Supreme Court's oft-quoted test of Speech or Debate Clause immunity:

> The heart of the Clause is speech or debate in either House. Insofar as the Clause is construed to reach other matters, they must be an *integral part* of the deliberative and communicative processes by which Members participate in Committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the

Constitution places within the jurisdiction of either House.

*Gravel*, 408 U.S. at 625, 92 S.Ct. at 2627 (emphasis added). *See Eastland v. United States' Servicemen's Fund*, 421 U.S. 491, 504, 95 S.Ct. 1813, 1821, 44 L.Ed.2d 324 (1975); *Doe v. McMillan*, 412 U.S. 306, 314, 93 S.Ct. 2018, 2025, 36 L.Ed.2d 912 (1973); *Consumers Union v. Periodical Correspondents' Association*, 515 F.2d 1341, 1350 (D.C.Cir.1975). In a case decided contemporaneously with *Gravel*, the Supreme Court clarified its reading of the Speech or Debate Clause, stating: "The only reasonable reading of the Clause, consistent with its history and purpose, is that it does not prohibit inquiry into activities that are casually or incidentally related to legislative affairs but not a part of the legislative process itself." *United States v. Brewster*, 408 U.S. 501, 528, 92 S.Ct. 2531, 2545, 33 L.Ed.2d 507 (1972).

### B.

In *Walker v. Jones*, this court considered the scope of the Speech or Debate Clause immunity in the context of a congressional personnel decision.[10] The plaintiff in *Walker* sued the congressional defendants alleging that she was discharged as general manager of the House of Representatives Restaurant System because she was a woman. *See Walker*, 733 F.2d at 925–26. The congressional defendants asserted that their actions were protected from judicial inquiry by the Speech or Debate Clause. *Id.* at 925.

■■■ By a divided panel, this court ultimately held that the congressional defendants could not avail themselves of the

---

**8.** [I]n order to give to the will of the people the influence it ought to have, and the information which may enable them to exercise it usefully, it was a part of the common law, adopted as the law of this land, that their representatives, in the discharge of their functions, should be free from the cognizance or coercion of the coordinate branches, Judiciary and Executive.... 8 Works of Thomas Jefferson 322–23 (Ford ed. 1904).

**9.** *See supra* note 6.

**10.** A similar opportunity for the Supreme Court arose in *Davis v. Passman*, 442 U.S. 228, 99 S.Ct.

2264, 60 L.Ed.2d 846 (1979). In *Davis*, the Supreme Court was called upon to review a Congressman's discharge of his deputy administrative assistant because she was a woman. The Supreme Court ultimately implied a cause of action under the Fifth Amendment in favor of the discharged employee. The Supreme Court refused, however, with the case in that posture, to consider the claim that the discharge was protected from judicial scrutiny by Speech or Debate Clause immunity. *Id.* at 235–36 n. 11, 99 S.Ct. at 2271–72 n. 11.

Speech or Debate Clause immunity. *Id.* at 928–32. In holding that the discharge of the restaurant manager fell outside the scope of the Speech or Debate Clause, this court identified the ultimate issue to be the *duties of the employee. Id.* at 930–31. Where the duties of the employee implicate Speech or Debate Clause concerns, so will personnel actions respecting that employee.

Judicial inquiry into the motivations behind Walker's discharge implicated none of the concerns of the Speech or Debate Clause. The decision recites two possible tests, both of which characterize Walker's position as nonlegislative and suggest that the Speech or Debate Clause immunity should not apply. One test provided that the Speech or Debate Clause immunity would apply whenever the employee's duties reasonably could be described "as work that significantly informs or influences the shaping of our nation's laws." *Id.* at 931. This test suggests that the immunity attaches to personnel decisions where the employee has "meaningful input into ... legislative decisionmaking." *Id.* at 930 (quoting *Davis v. Passman,* 544 F.2d 865, 880–81 n. 25 (5th Cir.1977), *rev'd on other grounds,* 571 F.2d 793 (5th Cir.1978) (en banc), *rev'd,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) *(see supra* note 10)). The second test provided that Speech or Debate immunity would protect any personnel decision involving an employee whose duties were "peculiar to a Congress member's work qua legislator," or, stated differently, " 'intimately cognate' ... to the legislative process." *Walker,* 733 F.2d at 931 (quoting *Davis,* 544 F.2d at 879).

In *Walker* these alternative tests served to suggest that personnel actions in the course of superintending congressional

food services facilities were not shielded by the Speech or Debate Clause even though such facilities were great time savers for members of Congress and their staffs. Food services as well as other services catering to human needs are neither intimately cognate to the legislative process nor work that significantly informs the shaping of our Nation's laws. In the instant case, by contrast, there can be little doubt that an Official Reporter, performing duties such as the recording of sworn testimony of witnesses in a congressional investigation entitled "Involvement of Organized Crime in the Hazardous Waste Disposal Industry," plays a role that is "intimately cognate to the legislative process." *Id.* Nevertheless, the district court below held that the Speech or Debate Clause immunity does not apply to congressional personnel decisions involving the Official Reporters. The district court's holding seems to rest on an interpretation of the first test recited in *Walker*—the "meaningful input" test—which requires that before immunity will apply, the congressional employee's duties must entail *discretionary* input into the legislative process.[11] This court's holding in *Walker* was not meant to be so restrictive, however, and we attempt below to express a clearer test of the Speech or Debate Clause immunity.

## C.

▆ The touchstone to determining whether the Speech or Debate Clause immunity attaches is whether the activities at issue were "an integral part of the deliberative and communicative processes [of Congress]," *Gravel,* 408 U.S. at 625, such that the activity is legislative in character. Personnel decisions are an integral part of the

---

**11.** It is unclear from the district court's opinion how the district court interpreted *Walker.* The court's one-paragraph order fails to explain its holding. *See Browning v. Clerk, U.S. House of Representatives,* No. 84–1637 (D.D.C. filed Dec. 17, 1984). But at oral argument, the district court did note the following, which suggests that the court understood *Walker* to apply the Speech or Debate Clause only to congressional personnel actions involving employees with discretionary input into the legislative process:

The Court: ... it seems to me that there is a fundamental difference between a member reporter who *selectively* records, as a Recording Secretary, the minutes of a meeting and *makes editorial judgments,* if you will, as to what is going into the official record, and *a verbatim transcript,* which is the human equivalent of a tape recorder.
Trial Transcript at 29 (emphasis added).

legislative process to the same extent that the affected employee's duties are an integral part of the legislative process. *Cf. Agromayor v. Colberg,* 738 F.2d 55 (1st Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 515, 83 L.Ed.2d 405 (1984). Thus, if the employee's duties are an integral part of the legislative process, such that they are directly assisting members of Congress in the "discharge of their functions," personnel decisions affecting them are correspondingly legislative and shielded from judicial scrutiny.

■ To limit the scope of the Speech or Debate Clause immunity to personnel actions where the employee has discretionary input into the legislative process is far too restrictive a view. The Speech or Debate Clause is designed to preserve the integrity of the legislative process by preventing "intimidation by the executive and accountability before a possibly hostile judiciary." *United States v. Johnson,* 383 U.S. 169, 181, 86 S.Ct. 749, 755, 15 L.Ed.2d 681 (1966). It is intended to shield legislators from "the hazard of a ... jury's speculation as to motive," *Tenney v. Brandhove,* 341 U.S. at 377, 71 S.Ct. at 788, and thus must shield from judicial inquiry *all* matters within the legislative sphere. "The claim of an unworthy purpose does not destroy the privilege." *Id.*

■ On the other hand, it is equally important that this immunity not be understood to protect *any* matter however remotely related to the legislative process. The protected activity must be a part of "the *due functioning* of the legislative process." *Brewster,* 408 U.S. at 516, 92 S.Ct. at 2539. The clause cannot be read to include all things in any way related to the legislative process because "[g]iven such a sweeping reading, we have no doubt that there are few activities in which a legislator engages that he would be unable somehow to 'relate' to the legislative process."

*Id.* With these parameters in mind, we hold that the standard for determining Speech or Debate Clause immunity is best expressed as whether the employee's duties were *directly related to the due functioning of the legislative process.*

■ There can be little doubt that Browning's duties as an Official Reporter were directly related to the legislative process. The Official Reporters record floor and committee proceedings both for later use in forming legislation and to create a permanent record of the proceedings. Indeed, the accurate reporting of a committee investigation, because of the possibility of actions for contempt and perjury, could be more important than the reporting of speeches on the floor of Congress, which are submitted to Members prior to publication for correction, revision, and extension. A cursory look through the record of the instant case reveals the integral role fulfilled by the Official Reporters. Letters written on behalf of Browning, included in the record for other reasons, refer to her duties in recording testimony before House committees both locally and "in the field" involving such matters as the Voting Rights Act extension, *see* JA 33, frauds against the elderly, *see* JA 34, and narcotics and drug abuse, *see* JA 35. As noted above,[12] at Browning's dismissal both Ladd and Henshaw referred to a particular assignment which Browning failed to execute properly concerning hearings before the House Subcommittee on Oversight and Investigations, Committee on Interstate and Foreign Commerce, on Involvement of Organized Crime in the Hazardous Waste Disposal Industry. The testimony was taken under oath to ensure veracity and for possible use in judicial proceedings should any of the testimony prove false or perjurious. *See* JA 11. Surely the recordation of these proceedings was directly related to the proper execution of this legislative investigation.[13] It is equally well-recognized that

12. *See supra* at 925.

13. The history of the Official Reporters further indicates their integral role in the legislative process. Prior to the middle of the nineteenth century, the House of Representatives made no formal provision for stenographic reporting of committee hearings or floor debates. Only beginning about the time of the Civil War did Congress begin to employ Official Reporters.

such an investigation is part of the due functioning of the House of Representatives. Along with the power to formulate legislation and the power to communicate within the legislature, the power to investigate clearly falls within the legislative sphere. *See Eastland,* 421 U.S. at 504, 95 S.Ct. at 1822. Thus, the Speech and Debate Clause applies to shield the congressional action at issue here from judicial scrutiny.

Consideration of some of the questions a court would be required to pose in considering Browning's claim further illustrates the necessity of Speech or Debate Clause immunity here. *Cf. United States v. Johnson,* 383 U.S. 169, 184–85, 86 S.Ct. 749, 757–58 (1966) (a criminal prosecution dependent on inquiries into legislative matters contravenes the Speech or Debate Clause). For example, in assessing the adequacy of Browning's performance a court would necessarily have to inquire about matters at the very heart of the legislative process, such as the nature of the hearings to which Browning was assigned, the purposes underlying those hearings, and whether Browning's performance frustrated those purposes. But this sort of intrusion into the legislative sphere is exactly the sort of intrusion that the Speech or Debate Clause is designed to prevent. This is very different from a case like Walker, where Congressmen would be required to testify, if at all, only with respect to the operation of the House restaurants.

### D.

■ In concluding that the nature of Browning's duties place this personnel action within the legislative sphere and therefore beyond the cognizance of the judiciary, we are not unmindful that Congress has provided for the resolution of its internal disputes.[14] Although we are not suggesting that a lack of alternative remedies would alter our decision today, we note that Congress has provided for internal procedures to address complaints such as Browning's.

The Rules of the House of Representatives authorize the Committee on Standards of Official Conduct to investigate alleged violations of the House of Representatives' Code of Official Conduct or of any law, rule, or regulation by any member, officer or employee of the House.[15] *See* Rules of the House of Representatives, 97th Cong., Rule X, cl. 4(e)(1)(B). Under these rules an investigation may be conducted either upon the complaint of a member of the House, or by an individual not a member of the House whose complaint is accompanied by three written refusals by Representatives to transmit the complaint. *Id.,* cl. 4(e)(2)(B)(i) & (ii). These procedures have previously been invoked by non-members. *See, e.g., In the Matter of Representative Geraldine A. Ferraro,* H.R.Rep. No. 1169, 98th Cong., 2d Sess. (1984) (where a non-member brought a complaint seeking an investigation of alleged discrep-

---

Notes had previously been taken by the individual Congressmen themselves. *See* L. McConachie, Congressional Committees: A Study of the Origins and Development of Our National and Local Legislative Methods 65 (1898).

Congress initially hired private reporters, but the lack of control over them persuaded Congress in 1866 to employ Official Reporters. *See* Cong. Globe, 38th Cong., 1st Sess. 300 (1866). This was the beginning of the House of Representatives' Office of Official Reporters.

**14.** It is not suggested that the House Rules constitute an exhaustion requirement prior to litigation. The question of exhaustion is not before the court because on this interlocutory appeal the only question properly before the court is the question of Speech or Debate Clause immunity. *See* 28 U.S.C. § 1291; *Abney v. United*

*States,* 431 U.S. 651, 662–63, 97 S.Ct. 2034, 2041–42, 52 L.Ed.2d 651 (1977). The question of exhaustion is saved for another case.

**15.** This is broad enough to include constitutional violations. Moreover, the acts of the congressional defendants here, if true, would also constitute a violation of House of Representatives Rule XLIII, the Code of Official Conduct, which provides that "[a] Member, officer or employee of the House of Representatives shall not discharge or refuse to hire any individual, or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." Rules of the House of Representatives, 97th Cong., Rule XLIII, cl. 9.

ancies in Representative Ferraro's financial disclosures).

The Rules of the Committee on Standards of Official Conduct set forth the procedures to be followed in considering such complaints. *See* Rules of the Committee on Standards of Official Conduct, 97th Cong., Rules 9–21. These Rules provide that for violations by Representatives, the Committee may recommend to the House that the member be expelled, censured, reprimanded, fined, denied privileges, and assessed "[a]*ny other sanction determined by the Committee to be appropriate.*" *Id.*, Rule 17(b)(1)(A)–(F) (emphasis added). Violations by employees may be punished by dismissal, fine, and "[a]ny other sanction determined by the Committee to be appropriate." *Id.*, Rule 17(b)(2)(A)–(C). It is not clear from these Rules whether Browning could obtain damages for violation of her constitutional rights. But it is clear that significant redress is available to her within the Congress. The authority to impose an "appropriate ... sanction" is a broad grant of power to redress grievances.

### III. CONCLUSION

We hold that Browning's duties as an Official Reporter were directly related to the due functioning of the legislative process, and as such the personnel decision in her case is nonjusticiable under the Speech or Debate Clause. We do not reach this conclusion lightly, as we are mindful of the conflict between Browning's constitutional rights and the important separation-of-powers concerns embodied in the Speech or Debate Clause. The framers of the Constitution were aware of the potential risks that this immunity created, however, and the free and unreserved exercise of the duties of a representative "was the conscious choice of the Framers." *Brewster*, 408 U.S. at 516, 92 S.Ct. at 2539. "In the American governmental structure the clause serves the additional function of reenforcing the separation of powers so deliberately established by the Founders." *United States v. Johnson*, 383 U.S. 169, 178, 86 S.Ct. 749, 754, 15 L.Ed.2d 681 (1966).

For the foregoing reasons, we reverse the order of the district court and remand this case with instructions to dismiss the complaint for want of subject matter jurisdiction.

*Judgment Accordingly.*