**Rita BASTIEN, Plaintiff,**

v.

**The OFFICE of Senator Ben Nighthorse CAMPBELL, Defendant.**

**No. CIV.A.01–WY–799–CB.**

United States District Court, D. Colorado.

June 27, 2002.

John S. Evangelisti, Denver, CO, Karen Hendrick Larson, Denver, CO, for plaintiff.

Jean Marie Manning, Office of Senate Chief Counsel for Employment, Washington, DC, Claudia Anne Kostel, Office of Senate Chief Counsel for Employment, Great Falls, VA, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

BRIMMER, District Judge.

This action arises from Plaintiff's allegations of discrimination and retaliation based upon her age. The matter is currently before the Court on Defendant's Motion to Dismiss and Motion to Strike Portions of the Amended Complaint. Upon reading the briefs, hearing oral argument, and being fully advised of the premises, the Court **FINDS** and **ORDERS** as follows:

### Background

Plaintiff Rita Bastien is a sixty two year old Hispanic female who was employed as a staff member by Defendant, the Office of Senator Ben Nighthorse Campbell, from July 7, 1994 until she was terminated April 10, 2001. From July 7, 1994 through September 4, 2000, Plaintiff served as a Senate Aide in Defendant's Englewood, Colorado office. On September 5, 2000, Plaintiff was transferred to Defendant's Colorado Springs, Colorado office, where she was employed as District Director until her termination on April 10, 2001.

Regarding her transfer from Defendant's Englewood, Colorado office to Defendant's Colorado Springs, Colorado office, Plaintiff first argues that her transfer caused her to commute extensively, creating a financial and emotional hardship upon her as she was a life-long resident of Denver, with family in Denver. Plaintiffs second contention is that her transfer was not based upon or part of a policy of cross training or rotation, as she claims that Defendant had no such policy requiring the rotation and transfer of employees, and that other employees who travel extensively for their jobs did so voluntarily.[1] Finally, Plaintiff maintains that the person she essentially traded positions with, Ms. Lawton,[2] was given preferential treatment from Defendant's Chief of Staff, Ms. Kontnik, who Plaintiff claims demonstrated a preference for the "younger" Ms. Lawton. During this period Ms. Lawton was 50.

Plaintiff contends that Defendant is attempting to justify her transfer to Colorado Springs for a number of reasons, including that Plaintiff was "a gossip, disruptive, and a rat" and that the transfer may help solve her problems. Pl.'s Com. L. 36–38. Plaintiff maintains that these reasons are pretextual. Plaintiff further claims that the reasons urged by Defendant to justify her termination—that Plaintiff was not a team player, she complained to constituents, she was rude to constituents, she took leave without permission, she contacted the Senator's ranch, she left early without approval, she had unknown whereabouts, she failed to perform outreach or provide monthly reports, she provided misleading information about her schedule, she lied about attending a defense task-force meeting, and she spent too much time on personal calls—are all recent fabrications that are merely pretextual for Defendant's discriminatory treatment toward her. Plaintiff's Com. L. 59–69.

Plaintiff contends that her involuntary transfer from the Englewood office to the Colorado Springs office, the allegedly negative treatment she received at that office, and her subsequent termination are all acts of discrimination based upon her age, and retaliation for complaints of discrimination based upon her age. Relying upon the above allegations, Plaintiff brings two claims for relief under the Congressional Accountability Act ("CAA"), 2 U.S.C. § 1301 *et seq.* In her First Claim for Re-

---

1. The Plaintiff does indicate that Defendant, in special circumstances has forced the transfer of staff members. In support of this, Plaintiff alleges that Defendant forced staff members to transfer to Washington D.C. when the Senator became a Republican, which she claims essentially forced the staffers to quit.

2. Plaintiff claims that when she was transferred from the Englewood Office to the Colorado Springs office, to become the District Director, the then Director of the Colorado Springs office, Ms. Lawton, was transferred or moved to the Englewood office to serve as a Senate Aide, in which capacity she served in until February 2002 when she was transferred back to the Colorado Springs office to serve as District Director. *See* Def.'s Rebuttal of Pl.'s Supp. Resp. to Def's Mot. to Dismiss and Mot. to Strike Ex. 1.

lief, Plaintiff alleges age discrimination and disparate treatment in violation of the Congressional Accountability Act, 2 U.S.C. § 1301 *et seq.*. Plaintiff's Second Claim for Relief alleges Retaliation in violation of the Congressional Accountability Act, 2 U.S.C. § 1301 *et seq.*.

### *Analysis*

#### *Rule 12(b)(1) Standard*

Defendant is requesting that the Court dismiss Plaintiff's Amended Complaint in its entirety pursuant to Rule 12(b)(1) on the basis that the Speech or Debate Clause of the United States Constitution (U.S.CONST. art. I, § 6, cl.1) bars the Court's jurisdiction over this action. In support of this motion, Defendant has submitted various materials describing the role and job duties of the Plaintiff while working for the Defendant. In response to this motion, Plaintiff has also submitted affidavits describing Plaintiff's job duties, as well as a variety of documents discussing the Congressional Accountability Act and its interaction with the Speech and Debate Clause of the United States Constitution.

██ "Rule 12(b)(1) empowers a court to dismiss a complaint for 'lack of jurisdiction over the subject matter.' Fed. R.Civ.P. 12(b)(1)." *Neiberger v. Hawkins*, 208 F.R.D. 301, 307–08 (D.Colo.2002). "Motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may take one of two forms. First, a party may make a facial challenge to the plaintiff's allegations concerning subject matter jurisdiction, thereby questioning the sufficiency of the complaint. In addressing a facial attack, the district court must accept the allegations in the complaint as true. Secondly, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. In addressing a factual attack, the court does not presume the

truthfulness of the complaint's factual allegations, but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *U.S. v. Rodriguez Aguirre*, 264 F.3d 1195, 1204 (10th Cir.2001) (citing *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995)).

██ In the present case, Defendant's motion to dismiss for lack of jurisdiction shall be construed as a factual attack upon the complaint, as the Defendant, pursuant to of the protections afforded the by the Speech or Debate Clause, is challenging the ability of this specific Plaintiff, because of her particular job duties, to bring the present action. Therefore, the Court will allow and review the affidavits and additional materials submitted by the parties, and will not presume the truthfulness of Plaintiff's allegations. *See Sizova v. Nat. Institute of Standards & Technology*, 282 F.3d 1320, 1324 (10th Cir.2002) (citing *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir.1995)).

#### *Congressional Accountability Act of 1995 2 U.S.C. § 1301 et seq.*

The allegations and relief requested in Plaintiff's Amended Complaint are based upon the Congressional Accountability Act of 1995, 2 U.S.C. § 1301 *et seq.* ("CAA"). The CAA applies eleven federal employment laws, including the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 621 *et seq.*) to the legislative branch of the Federal Government. 2 U.S.C. § 1302(a). In addition to prohibiting discrimination on the basis of age, the CAA prohibits discrimination based on race, color, religion, sex, national origin, or disability. 2 U.S.C. § 1311(a). Further the CAA prohibits retaliation, intimidation or reprisals against covered congressional employees who exercise their rights under the

CAA. 2 U.S.C. § 1317. The CAA provides the exclusive remedy for employment discrimination law suits brought against congressional offices. 2 U.S.C. § 1361(d). Thus, the present age discrimination grievance is governed solely by the procedures and remedies set forth in the CAA. *Id.* Finally, the CAA expressly preserves and maintains the sovereign immunity granted to any Senator or Member of the House of Representatives under article I, § 6, clause 1, of the U.S. Constitution ("Speech or Debate Clause"). 2 U.S.C. § 1413.

### Speech or Debate Immunity

■ Article I § 6 clause 1 of the United States Constitution provides the immunity commonly known as the Speech or Debate Clause, which states in pertinent part that members of Congress: "for any Speech or Debate in either House... shall not be questioned in any other place." U.S. CONST. art. I, § 6, cl. 1. The purpose of the Speech or Debate clause is "to assure a co-equal branch of the government wide freedom of speech, debate, and deliberation without intimidation or threats from the Executive Branch." *Gravel v. United States,* 408 U.S. 606, 616, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972). Further, it "protects Members against prosecutions that directly impinge upon or threaten the legislative process." *Id.*[3]

■ The express language of the Clause addresses only "Speech or Debate," but it has been consistently held that to confine the Speech or Debate clause solely to words spoken in debate would be an unacceptably myopic view. *Gravel,* 408 U.S. at 617–18, 92 S.Ct. 2614. The Speech or Debate Clause has been consistently interpreted to protect "[c]ommittee reports, resolutions, and the act of voting...; in short, ... things generally done in a session of the House by one of its members in relation to the business before it." *Id.* (internal citations omitted). "Rather than giving the clause a cramped construction, the Court has sought to implement its fundamental purpose of freeing the legislator from executive and judicial oversight that realistically threatens to control his conduct as a legislator." *Id.* However, everything a Member of Congress may regularly do is not a legislative act within the protection of the Speech or Debate Clause, as "[t]he Clause has not been extended beyond the legislative sphere, and legislative acts are not all-encompassing." *Doe v. McMillan,* 412 U.S. 306, 314, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973); *see also Gravel,* 408 U.S. at 624–25, 92 S.Ct. 2614

---

**3.** Although the Speech or Debate Clause specifically mentions only "Senators and Representatives," these protections have been extended to apply to the aides of Members of Congress. *Gravel v. U.S.,* 408 U.S. 606, 616, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972) (for purposes of the Speech and Debate privilege Members of Congress and their aides are to be treated as one). Applying this principle to the present action, the Speech and Debate analysis will apply to the qualified actions of the Plaintiff, just as it applies to the qualified actions of Senator Campbell himself. As the Court stated in *Gravel:*

> [I]t is literally impossible, in view of the complexities of the modern legislative process, with Congress almost constantly in session and matters of legislative concern constantly proliferating, for Members of Congress to perform their legislative tasks without the help of aides and assistants; that the day-to-day work of such aides is so critical to the Members' performance that they must be treated as the latter's alter egos; and that if they are not so recognized, the central role of the Speech or Debate Clause—to prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary will inevitably be diminished and frustrated.

*Id.* at 616–17, 92 S.Ct. 2614. Thus, given the relationship between Senators and their aides, Members of Congress may invoke the Speech or Debate privileges which attaches to the actions of their aides.

("[T]he Clause has not been extended beyond the legislative sphere. That Senators generally perform certain acts in their official capacity as Senators does not necessarily make all such acts legislative in nature").

■ For an act to be considered legislative in nature, and thereby garner the protections provided by the Speech or Debate Clause, the activities at issue "must be an integral part of the deliberative and communicative processes..." of Congress. *Gravel,* 408 U.S. at 625, 92 S.Ct. 2614. In other words, "the standard for determining Speech or Debate Clause immunity is best expressed as whether the employee's duties were directly related to the due functioning of the legislative process." *Browning v. Clerk, U.S. House of Representatives,* 789 F.2d 923, 928–29 (D.C.Cir. 1986), *cert. denied,* 479 U.S. 966, 107 S.Ct. 468, 93 L.Ed.2d 413 (1986).[4] Thus, Speech or Debate protections will not apply to a legislative functionary, such as the Plaintiff, when she is carrying out a non-legislative task. *Doe v. McMillan,* 412 U.S. at 315, 93 S.Ct. 2018.

In the present action, Defendant contends that Plaintiff's duties and actions as both a Senate Aide, in the Englewood office, and a District Director, in the Colorado Springs office, were duties that directly related to the due functioning of the legislative process. In support of this view, Defendant contends that Plaintiff's duties of meeting with constituents, gathering information for the Senator, discussing constituent suggestions and then conveying them to the Senator, constitute actions that directly relate to the due functioning of the legislative process. Plaintiff responds by claiming that her actions were political rather than legislative in nature, and that although she met with constituents to discuss certain issues, she never performed legislative functions.

■ As stated earlier, the Speech or Debate Clause of the United States Constitution provides immunity to Members of Congress and their aides for actions, including personnel actions, that are an integral part of Congress' deliberative and communicative processes, and specifically protects actions directly related to the due functioning of the legislative process.

4. Plaintiff contends that the proper standard to determine whether the Speech or Debate immunity prevents the present suit is to look to the actions of the Defendant and determine whether such actions were legislative or administrative in nature. In support of this argument, that Defendant's actions were administrative and therefore unable to receive Speech or Debate immunity, Plaintiff cites *Forrester v. White,* 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). In *Forrester,* the Court was faced with the question of whether a state judge's personnel decision was entitled to judicial immunity at common law. In deciding that the judge's personnel decision was not entitled to common law judicial immunity the Court applied and sanctioned the functional approach for immunity questions, except for those that have been decided by express constitutional or statutory enactment. *Id.* at 224. Under the functional approach, the court is to look to the nature of the functions and actions of those officials seeking immunity. *Id.* However, in the present action, Plaintiff's reliance on the functional approach is misguided, as the present case involves the constitutional protections embodied in the Speech or Debate Clause and does not involve issues of common law immunity. This distinction is critical, as the Court in *Forrester* declined to address the issues surrounding the special constitutional considerations applicable to members of Congress, and the Court specifically distinguished constitutional immunity from common law immunity. *Id.* at 224, 108 S.Ct. 538. Therefore, as stated earlier, the examination of Plaintiff's claim herein will address whether Plaintiff's "duties were directly related to the due functioning of the legislative process." *Browning v. Clerk, U.S. House of Representatives,* 789 F.2d 923, 928–29 (D.C.Cir.1986), *cert. denied,* 479 U.S. 966, 107 S.Ct. 468, 93 L.Ed.2d 413 (1986).

*Browning,* 789 F.2d at 928–29 ("Personnel decisions are an integral part of the legislative process to the same extent that the affected employee's duties are an integral part of the legislative process"). However, very few courts, including the Tenth Circuit, have addressed whether the personnel actions taken by Members of Congress should receive Speech or Debate immunity. The courts that have addressed this issue have reached conflicting results. Namely, as stated above, in *Browning,* 789 F.2d 923 the court found that the personnel action of discharging the plaintiff, Browning, was protected by the Speech or Debate clause from attack because Browning's duties as an Official Court Reporter for the House of Representatives were directly related to the due functioning of the legislative process. *Id.* 928–29. Further, in *Niedermeier v. Office of Baucus,* 153 F.Supp.2d 23 (D.D.C.2001) the district court noted that a Senator's personnel actions with respect to the Senator's Chief of Staff were protected by the Speech or Debate Clause, as the Clause provides immunity for legislative acts, which include personnel actions of members of congress. *Id.* at 31, fn. 5. In contrast to *Browning* and *Niedermeier,* the Fifth Circuit in *Davis v. Passman,* 544 F.2d 865 (5th Cir. 1977), found that the Speech or Debate Clause does not extend protection to the dismissal of staff members, as such an action does not constitute a legislative function. *Id.* at 880.

In reviewing these contrasting opinions, the Court finds the opinions of *Browning* and *Niedermeier*—that the Speech or Debate Clause protects certain personnel actions taken by Members of Congress—to be the most persuasive and accurate interpretation of the immunity afforded by the Speech or Debate Clause. The Court finds that the standards promulgated and promoted in these cases support the spirit of the Speech or Debate Clause and are in compliance with the Supreme Court's rul-

ing in *Gravel v. U.S.,* 408 U.S. 606, 616, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972). Further, this Court's reliance on the findings made in both *Browning,* and *Niedermeier,* are bolstered by the fact that the Fifth Circuit's opinion on the Speech or Debate issue in *Davis v. Passman,* 544 F.2d 865 (5th Cir.1977) is of doubtful validity.

The panel decision in *Davis,* 544 F.2d 865 was vacated when the Fifth Circuit *en banc* dismissed plaintiff Davis' claim for failure to state a claim. *See Davis v. Passman,* 571 F.2d 793, 795, 801 (5th Cir. 1978). Yet in doing so, the *en banc* court did not decide the Speech or Debate issue. *Id.* The *en banc* court's decision was then appealed to the United States Supreme Court, and in *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) the Court reversed the *en banc* court's decision. *Davis,* 442 U.S. 228, 99 S.Ct. 2264. However, regarding the Speech or Debate issue, the Court stated that:

> The en banc Court of Appeals did not decide whether the conduct of respondent was shielded by the Speech or Debate Clause. In the absence of such a decision, we also intimate no view on this question. We note, however, that the Clause shields federal legislators with absolute immunity "not only from the consequences of litigation's results but also from the burden of defending themselves."

*Id.* at 235 n. 11, 99 S.Ct. 2264. Although the Speech or Debate issue addressed by the Fifth Circuit in the original *Davis* case was never directly addressed by either the *en banc* Fifth Circuit Court or the United States Supreme Court, the original *Davis* decision was vacated by the *en banc* court; and even though the United States Supreme Court reversed the *en banc* court's ruling, when faced with the apparent opportunity to address this issue, the Court declined to do so. *Id.* Therefore, in light

of this procedural history, it appears that the continued validity of the Speech or Debate issue as promulgated in the original Davis decision, *Davis,* 544 F.2d 865 (5th Cir.1977), is of questionable validity. Nonetheless, even if the validity of the original *Davis* decision was not called into doubt by the subsequent proceedings of the *en banc* court and the United States Supreme Court, this Court finds the arguments and standards established in *Browning,* and *Niedermeier,* to be the most persuasive and accurate application of the Speech or Debate Clause to personnel actions taken by Members of Congress.

 Although this Court aligns with the courts in *Browning,* and *Niedermeier,* (D.D.C.2001) in finding that the Speech or Debate Clause provides immunity to Members of Congress and their aides for personnel actions taken with respect to employees whose duties are directly related to the due functioning of the legislative process, the Court recognizes that very few courts, including the Tenth Circuit, have addressed the full scope of this privilege as it applies to the particular job functions of a Member's aide. It appears that determining whether the actions of a particular Member of Congress' aide will satisfy the standard of directly relating to the due functioning of the legislative process should be made on a case by case basis.

For example, in *Walker v. Jones,* 733 F.2d 923 (D.C.Cir.1984), *cert denied,* 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984), the court held that "personnel actions regarding the management of congressional food services are too remote from the business of legislating to rank 'within the legislative sphere' so as to receive the protections of the Speech or Debate Clause". *Id.* at 929. Yet, in *Browning v. Clerk, U.S. House of Representatives,* 789 F.2d 923, 928–29 (D.C.Cir. 1986), *cert. denied,* 479 U.S. 966, 107

S.Ct. 468, 93 L.Ed.2d 413 (1986), the court found that the duties of an Official Reporter for the House of Representatives were directly related to the due functioning of the legislative process, and as such, the personnel actions against her were nonjusticiable under the Speech or Debate Clause. *Id.* at 931. The court stated that the nature of the Official Reporter's job duties of recording testimony before the House committees, both locally and in the field, involving various matters, were directly related to the due functioning of the legislative process. *Id.* at 929. The court further noted its reasoning behind the Speech or Debate protection of personnel actions taken by Members of Congress against their employees—employees who engage in the requisite employment activities:

> Consideration of some of the questions a court would be required to pose in considering Browning's claim further illustrates the necessity of Speech or Debate Clause immunity here. For example, in assessing the adequacy of Browning's performance a court would necessarily have to inquire about matters at the very heart of the legislative process, such as the nature of the hearings to which Browning was assigned, the purposes underlying those hearings, and whether Browning's performance frustrated those purposes. But this sort of intrusion into the legislative sphere is exactly the sort of intrusion that the Speech or Debate Clause is designed to prevent. This is very different from a case like *Walker,* where Congressmen would be required to testify, if at all, only with respect to the operation of the House restaurants.

*Id.* at 930 (internal citations omitted). Additionally, in *Niedermeier v. Office of Baucus,* 153 F.Supp.2d 23, (D.D.C.2001) the court relying on *Browning,* stated in a footnote that the personnel actions of the

defendant Senator were protected because of the plaintiff's duties as chief of staff. *Id.* at 31, n. 5.

 Accordingly, from the above cases, it is apparent that when determining protections afforded to the personnel actions taken by a Member of Congress, the nature and scope of the impacted employee's job functions will determine if the Member is able to receive immunity provided by the Speech or Debate Clause. Noting the necessity of the case by case determination, this Court finds that the majority of Plaintiff's job duties both as a Senate Aide in Defendant's Englewood, Colorado office and as a District Director in Defendant's Colorado Springs office, were directly related to the due functioning of the legislative process. Therefore, the personnel actions taken by Defendant against the Plaintiff are afforded Speech or Debate clause immunity.

While employed as a Senate Aide in Defendant's Englewood, Colorado office from July 7, 1994 through September 4, 2000, Plaintiff's main job duty was to work with constituents and serve as a liaison between Senator Campbell and his constituents. Plaintiff admits that her job duties "involved working with constituents who had either problems or comments to pass on to the Senator. If the problem involved a federal agency [Plaintiff's] job was to intervene on behalf of the constituent with the congressional liaison at the agency."

Pl.'s Resp. to Def.'s Mot. to Dismiss and Mot. to Strike, Ex. 1 ¶ 5 Aff. of Rita Bastien.[5] As a Senate Aide for Senator Campbell, the Plaintiff was required to travel outside the state of Colorado to attend meetings or congressional briefings on behalf of the Senator. Def.'s Rebuttal of Pl.'s Supp. Resp. to Def.'s Mot. to Dismiss and Mot. to Strike, Ex. 2 Declaration of Ginnie Kontnik (Senator Campbell's Chief of Staff), and Ex. B, Travel Report Memorandum of Rita Bastien. Upon returning from these meetings and hearings, Senate Aides in Defendant's Office, such as Plaintiff, are required "to prepare and submit to the State Director and Chief of Staff a memorandum describing the trip, the meetings attended during the trip, any information obtained during the trip, and the Senate Aide's recommendations or conclusions, if any, for the Senator." Def.'s Rebuttal of Pl.'s Supp. Resp. to Def.'s Mot. to Dismiss and Mot. to Strike, Ex. 2 Declaration of Ginnie Kontnik. In the Travel Report Memorandum dated March 14, 2000 regarding the INS Congressional Hearing attended by the Plaintiff, she first described the logistics and itinerary of the congressional briefing held at the National Service Center in Lincoln, Nebraska. The Plaintiff then made the following statement/recommendation:

> [T]hat the congressional briefing raised far more questions than it answered. Also, the INS would be more responsive

---

**5.** Plaintiff, throughout her Affidavit, repeatedly contends that her actions did not involve or impact the legislative process. However, merely saying it's so doesn't make it so. The evidence presented by Plaintiff has not demonstrated that her duties were not related to the legislative process. In fact, the substance of Plaintiff's Affidavit indicates that her activities involving constituents clearly related to the legislative process, in that her duties included gathering and conveying information pertinent to the Senator's legislative agenda to the Defendant. Further, the Court finds that the materials provided by the Defendant

to be more persuasive on the issue of Plaintiff's job duties than the mere assertions that her activities were not legislative contained in Plaintiff's Affidavit. Therefore, upon reviewing the Declarations of Catherine Lawton and Ginnie Kontnik and the update and memorandum material written by the Plaintiff (Def.'s Rebuttal of Pl.'s Supp. Response to Def's Mot. to Dismiss and Mot. to Strike Ex. 1,2, A, B), the Court finds that the majority of the Plaintiff's job duties were directly related to the due functioning of the legislative process.

to those in need of their services (including congress) if they were to be made accountable by congress. I feel strongly that they would respond differently if a congressional hearing were held.

**This presents a good opportunity for a congressional oversight hearing; it would generate press locally and nationally regarding how this agency treats its customers. Unlike other government agencies, INS' customers pay for services through fees, a fact most folks are unaware of. An oversight hearing would also be a good forum for discussion of the newly opened INS offices on the Western Slope; some of them have met a great deal of resistance.**

Def.'s Rebuttal of Pl.'s Supp. Resp. to Def.'s Mot. to Dismiss and Mot. to Strike, Ex. B, Travel Report Mem. of Rita Bastien (emphasis in the original).

The Plaintiff's interaction with constituents and her attendance at various meetings and congressional hearings on behalf of the Senator illustrates that Plaintiff's duty was not only to provide Senator Campbell with information, but to take action on behalf of the Senator and provide him with recommendations on various legislative issues and agendas. To question the Senator's personnel actions in this Court would impermissibly force the Court to inquire about "matters at the very heart of the legislative process" such as: 1) the nature of the conversations with constituents and the nature of the meetings and congressional briefings Plaintiff attended; 2) the purpose underlying the conversations with constituents and congressional briefings Plaintiff attended; 3) how the information Plaintiff obtained from those conversations, meetings, and congressional hearings influenced Senator Campbell's legislative agenda; and 4) whether Plaintiff's actions frustrated this agenda. *See Browning*, 789 F.2d at 930 ("in assessing the adequacy of [plaintiff's] performance a court would necessarily have to inquire about matters at the very heart of the legislative process, such as the nature of the hearings to which [plaintiff] was assigned, the purposes underlying those hearings, and whether [plaintiff's] performance frustrated those purposes. But this sort of intrusion into the legislative sphere is exactly the sort of intrusion that the Speech or Debate Clause is designed to prevent"). Accordingly, the Court finds that Plaintiff's duties as a Senate Aide for the Defendant were directly related to the due functioning of the legislative process. Therefore, Defendant is afforded the full protection of the Speech and Debate Clause for personnel actions taken against the Plaintiff while she was employed as a Senate Aide for the Defendant.

Regarding Plaintiff's employment as a District Director of Defendant's Colorado Springs office, from September 15, 2000 through April 10, 2001, Plaintiff again admits that one of her duties was to interact and work with the Senator's constituents. Pl.'s Resp. to Def.'s Mot. to Dismiss and Motion to Strike, Ex. 1 ¶ 5 Aff. of Rita Bastien. In addition to attending meetings with constituents, including meetings with community groups and associations to learn their feelings and opinions regarding how the Senator should vote on pending legislation, the Plaintiff's duties included gathering information for the Senator regarding Colorado-based legislative initiatives that he is considering, and communicating all of the information from the above meetings and data gathering to the Senator. *See* Def.'s Rebuttal of Pl.'s Supp. Resp. to Def's Mot. to Dismiss and Mot. to Strike Ex. 1–Declaration of Catherine Lawton; Ex. 2–Declaration of Ginnie Kontnik; and Def's Mem. in Support of Mot. to Dismiss, Ex. A–Declaration of Dave Devendorf.

As with her job duties as a Senate Aide, Plaintiff's job functions as a District Director were directly related to the due functioning of the legislative process, as the Plaintiff was entrusted with gathering and conveying to Senator Campbell himself, and to the Defendant, information critical to the Senator's legislative agenda. Furthermore, as stated above, if this action were to proceed, the Court would be forced to impermissibly inquire into matters essential to the legislative process and the Senator's legislative agenda such, as the nature and purpose of Plaintiff's meetings with constituents, how the information obtained from these meetings impacted Senator Campbell's legislative agenda and activities, and whether Plaintiff's performance of her job duties frustrated that agenda or misguided the Senator as to the will of his constituents. Accordingly, the Court finds that Plaintiffs duties as District Director for the Defendant were directly related to the due functioning of the legislative process. Therefore, Defendant's personnel actions against the Plaintiff while she was District Director are immunized by the full protections afforded in the Speech and Debate Clause of the United States Constitution.

### Conclusion

As cited earlier, the Speech or Debate Clause, Article I § 6 clause 1, of the United States Constitution does not immunize all congressional personnel actions, as not all congressional employees engage in job functions that are directly related to the due functioning of the legislative process. However, for the aforementioned reasons, the Court finds that the majority of Plaintiff's job duties while employed as a Senate Aide and District Director for the Defendant were directly related to the due functioning of the legislative process. Thus, Defendant's employment actions, of transferring and terminating the Plaintiff are immunized by the protections afforded by the Speech or Debate Clause of the Untied States Constitution.

Therefore, the Court **HEREBY ORDERS** that the Defendant's Motion to Dismiss is **GRANTED** and Plaintiff's claims are **DISMISSED WITH PREJUDICE**. Further, Defendant's alternative Motion to Strike Portions of the Amended Complaint is **HEREBY DENIED as MOOT**.