**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 10 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RITA BASTIEN,

        Plaintiff - Appellant,

    v.

THE OFFICE OF SENATOR BEN
NIGHTHORSE CAMPBELL,

        Defendant - Appellee,

AMERICAN FEDERATION OF
STATE COUNTY AND MUNICIPAL
EMPLOYEES, AFL-CIO; NATIONAL
EMPLOYMENT LAWYERS
ASSOCIATION; AARP; NATIONAL
ASIAN PACIFIC AMERICAN
LEGAL CONSORTIUM;
AMERICAN ASSOCIATION OF
PEOPLE WITH DISABILITIES,
PROJECT ON GOVERNMENT
OVERSIGHT; and PUBLIC CITIZEN,
INC.,

        Amici Curiae.

No. 02-1343

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 01-WY-799-CB(OES))**

---

John S. Evangelisti (Karen Larson, with him on the briefs), Denver, Colorado, for
Plaintiff - Appellant.

Jean Marie Manning, Senate Chief Counsel for Employment (Claudia A. Kostel, Senate Senior Counsel for Employment, with her on the brief), Office of Senate Chief Counsel for Employment, Arlington, Virginia, for Defendant - Appellee.

Traci L. Lovitt, of Jones, Day, Reavis & Pogue, New York, New York (Glen D. Nager, of Jones, Day, Reavis & Pogue, Washington, D.C., with her on the brief), for Amici Curiae American Federation of State, County and Municipal Employees, AFL-CIO, National Employment Lawyers Association, AARP, and American Association of People with Disabilities; Vincent Eng, Legal Director, National Asian Pacific American Legal Consortium, Washington, D.C., on the brief for Amicus Curiae National Asian Pacific American Legal Consortium; Larry P. Weinberg, General Counsel, American Federation of State, County and Municipal Employees, AFL-CIO, Washington, D.C.; Jenifer Bosco, Senior Staff Attorney, National Employment Lawyers Association, San Francisco, California; Andrew J. Imparato, President and CEO, American Association of People with Disabilities, Washington, D.C.

Allison M. Zieve, Public Citizen Litigation Group, Washington, D.C.; Sheila A. Bedi and David C. Vladeck, Institute for Public Representation, Georgetown University Law Center, Washington, D.C., on the brief for Amici Curiae Project on Government Oversight and Public Citizen, Inc.

---

Before **SEYMOUR**, **BALDOCK**, and **HARTZ**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

Our Constitution's Speech or Debate Clause states that "for any Speech or Debate in either House, [members of Congress] shall not be questioned in any other Place." U.S. Const. art. I, § 6, ¶ 1. The issue before us is whether this Clause precludes Plaintiff Rita Bastien's employment-discrimination claim brought under the Congressional Accountability Act of 1995 (the CAA). Senator

-2-

Ben Nighthorse Campbell fired Plaintiff from her position on his staff. Her duties included meeting with the public to obtain information used by the Senator for both constituent services and his legislative agenda. We hold that suit is not barred because the claim does not question the conduct of official Senate legislative business by Senator Campbell or his aides. We do not address, however, whether certain evidence may be inadmissible in this litigation because it concerns such conduct.

## I.    The Congressional Accountability Act

The CAA, 2 U.S.C. § 1301 *et seq*., extends the protections of 11 major workplace statutes to congressional employees. *See* § 1302(a)(1)–(11). It creates the Office of Compliance (OOC), an independent office within the legislative branch. *See id.* § 1381. The OOC has a five-member Board of Directors, appointed jointly by the Speaker of the House, the Senate Majority Leader, and the Senate and House Minority Leaders. *See id.* § 1381(b). "In addition to promulgating rules for implementation of the eleven statutes, the OOC oversees a complaint procedure that provides for counseling, mediation, formal hearings and decisions by a hearing officer, and appeal to the Board of Directors." James J. Brudney, *Congressional Accountability and Denial:  Speech or Debate Clause and Conflict of Interest Challenges to Unionization of Congressional Employees*, 36 Harv. J. Legis. 1, 9 (1999). *See generally* Sandra Mazliah, *The Congressional*

*Accountability Act of 1995: Meandering the Mandatory Administrative Maze*, 6 Fed. Cir. B.J. 5 (1996).  The CAA provides for judicial review, *see* 2 U.S.C. §1407, and it allows plaintiffs to opt out of some Board proceedings and instead file suit in federal district court.  *See id.* §§ 1404, 1408; *Brudney*, *supra*, at 9-10.

Under the CAA a plaintiff may file a complaint only against the employing office, not the individual member of Congress.  *See* 2 U.S.C. §§ 1405(a) & 1408(b).  The Office of House Employment Counsel, *see id.* § 1408(d), or the Senate Chief Counsel for Employment represents the office, *Brudney*, *supra*, at 10 n.46; and damages are paid from funds appropriated into the OOC's Treasury account.  *See* § 1415(a).  Of particular relevance to our case, the CAA explicitly retains Speech or Debate Clause immunity for members of Congress, *see* § 1413, thereby avoiding any issue regarding whether Congress as a whole can waive such immunity for individual members.

## II.    Factual and Procedural Background

Plaintiff  worked for six years—from July 7, 1994, to September 4, 2000—as a Senate Aide in Senator Campbell's Englewood, Colorado, office.  On September 5, 2000, at the age of 61, she was transferred to the Senator's Colorado Springs office, where she was a District Director.  On April 10, 2001, she was terminated.

Plaintiff sued Senator Campbell's office (the Office) under the CAA on

April 30, 2001, alleging age discrimination and retaliation for discrimination complaints. She alleged that the discrimination began several months before her transfer to Colorado Springs and continued until her termination.

The Office moved to dismiss the suit under Fed. R. Civ. P. 12(b)(1), contending that the Speech or Debate Clause barred federal subject matter jurisdiction over the case, and that the claim should be dismissed on the ground of sovereign immunity. The Office asserted that "Plaintiff's duties of meeting with constituents, gathering information for the Senator, discussing constituent suggestions and then conveying them to the Senator, constitute actions that directly relate to the due functioning of the legislative process," *Bastien v. Campbell*, 209 F. Supp. 2d 1095, 1101 (D. Colo. 2002), and accordingly should be shielded from judicial scrutiny by the Speech or Debate Clause. Plaintiff responded that "her actions were political rather than legislative in nature, and that although she met with constituents to discuss certain issues, she never performed legislative functions." *Id.*

The district court granted the Office's motion to dismiss. *Id.* It held that "the Speech or Debate Clause provides immunity to Members of Congress and their aides for personnel actions taken with respect to employees whose duties are directly related to the due functioning of the legislative process[.]" *Id.* at 1103. It then found that "the majority of Plaintiff's job duties . . . were directly related to

-5-

the due functioning of the legislative process." *Id.* at 1104.

The court characterized Plaintiff's job responsibilities in the Englewood office as follows:

> Plaintiff's interaction with constituents and her attendance at various meetings and congressional hearings on behalf of the Senator illustrates that Plaintiff's duty was not only to provide Senator Campbell with information, but to take action on behalf of the Senator and provide him with recommendations on various legislative issues and agendas.

*Id.* at 1105. It described her job responsibilities in the Colorado Springs office as including "gathering and conveying to Senator Campbell himself, and to the Defendant, information critical to the Senator's legislative agenda." *Id.* at 1106. The court concluded that "the personnel actions taken by [the Office] against the Plaintiff are afforded Speech or Debate Clause immunity." *Id.* at 1104.

Plaintiff appeals this ruling. We reverse and remand to allow the suit to proceed.

## III. The Speech or Debate Clause

The first paragraph of Article I, § 6 of the Constitution states:

> The Senators and Representatives shall receive a Compensation for their Services, to be ascertained by Law, and paid out of the Treasury of the United States. They shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place.

U.S.C.A. Const. art. I § 6, ¶ 1. On its face the Speech or Debate Clause would

not appear to apply to a Senator's conduct with respect to his employees. It appears to protect only the Senator's remarks on the Senate Floor. But the Supreme Court has long treated the Clause as constitutional shorthand for a more extensive protection.

The Office contends that this protection encompasses "personnel actions taken against employees whose job duties directly relate to the due functioning of the legislative process." Aplee. Br. at 41 (capitalization omitted). In its view, Plaintiff was such an employee, so her claim is constitutionally barred.

We disagree. As we read the Supreme Court's opinions on the Speech or Debate Clause, the Clause protects only "legislative" acts by a member of Congress or an aide, and only official, formal acts (or perhaps their functional equivalent) deserve the adjective "legislative." In particular, Plaintiff's informal contacts with constituents and other sources of information and opinion were not legislative in nature. Because Plaintiff's duties were not legislative and personnel actions allegedly taken against her were not in themselves legislative, her CAA claim can proceed.

Our conclusion follows from a careful review of Supreme Court precedent. We now proceed to summarize the Court's opinions to establish that the Office's contentions go beyond any holding and are inconsistent with the Court's explanations of its holdings.

The Court's first pronouncement on the Clause was in *Kilbourn v. Thompson*, 103 U.S. 168 (1880). First, *Kilbourn* held that a committee investigation exceeded the constitutional powers of the House of Representatives and hence ruled invalid a House order declaring a witness in contempt for violating a subpoena duces tecum issued by the committee. It reinstated the witness's claim against the House sergeant at arms for falsely arresting him in accordance with the order. *See id*. at 170-77, 205. Then, however, the Court held that the Speech or Debate Clause protected against suit the members of Congress responsible for the order.

The Court said that "it may be reasonably inferred that the framers of the Constitution meant the same thing" as what Lord Denman had said in construing the British Parliamentary privilege from which the Clause was derived:

> The privilege of having their debates unquestioned, though denied when the members began to speak their minds freely in the time of Queen Elizabeth, and punished in its exercise both by that princess and her two successors, was soon clearly perceived to be indispensable and universally acknowledged. By consequence, *whatever is done within the walls of either assembly must pass without question in any other place.* For speeches made in Parliament by a member to the prejudice of any other person, or hazardous to the public peace, that member enjoys complete impunity. For every paper signed by the speaker by order of the House, though to the last degree calumnious, or even if it brought personal suffering upon individuals, the speaker cannot be arraigned in a court of justice. But if the calumnious or inflammatory speeches should be reported and published, the law will attach responsibility on the publisher. So if the speaker by authority of the House order an illegal act, though that authority shall exempt him from question,

his order shall no more justify the person who executed it than King Charles's warrant for levying ship-money could justify his revenue officer.

*Id.* at 202 (quoting *Stockdale v. Hansard,* 9 Ad. & E. 1, 112 Eng. Rep. 1112 (K.C. 1839) (emphasis added)). Accordingly, the Court construed "Speech or Debate" broadly, writing:

> It would be a narrow view of the constitutional provision to limit it to words spoken in debate. The reason of the rule is as forcible in its application to written reports presented in that body by its committees, to resolutions offered, which, though in writing, must be reproduced in speech, and to the act of voting, whether it is done vocally or by passing between the tellers. In short, *to things generally done in a session of the House by one of its members in relation to the business before it.*

*Id.* at 204 (emphasis added).

To say that "Speech or Debate in either House" is to be construed broadly is not, however, to say that it should be cast free from its mooring. In particular, it should not be, and has not been, read to make members of Congress into a special class of citizens protected from suit (or prosecution) arising out of any activity that could assist in the performance of their official duties. After all, virtually anything that a member of Congress does could be said to relate, more or less directly, to official business (*e.g.*, causing an accident when speeding to attend a constituent's dinner party). And although any suit or prosecution against a member of Congress could improperly influence the member in the conduct of official duties, the Clause does not protect against all such intrusions. The

-9-

Supreme Court's jurisprudence indicates that the Clause's protection is limited to the conduct of official business of the member's chamber. Other activities by members are "political" rather than "legislative," however important they may be. In other words, "Speech or Debate" has been interpreted broadly to encompass voting, issuing reports, and other formal activity, but the phrase "in either House" that immediately follows "Speech or Debate" has limited the protection to official conduct. Thus, *Kilbourn* described the protection of the Clause as limited "to things generally done *in a session of the House* by one of its members in relation to the business before it." *Id.* at 204 (emphasis added). Later opinions continued this theme.

After *Kilbourn* the Supreme Court did not address the Speech or Debate Clause for another 70 years. The issue in *Tenney v. Brandhove*, 341 U.S. 367 (1951), was whether a civil rights claim could be brought against several state legislators for conducting a committee hearing to inquire into statements made by the plaintiff, himself a state legislator. *Id.* at 370-71. The Court held that the Congress that enacted the civil rights legislation could not have intended that law to impinge on the traditional privilege of legislators expressed at the national level in the Speech or Debate Clause. *Id.* at 376. The Court noted that "[i]nvestigations, whether by standing or special committees, are an established part of representative government," *id.* at 377, and ruled against the plaintiff

because the committee investigation had not "exceeded the bounds of legislative power," *id.* at 378. In other words, "Speech or Debate in either House" includes questioning witnesses in committee meetings.

*United States v. Johnson*, 383 U.S. 169, 185 (1966), added two important glosses to the Clause. First, the Court held that the Clause protects not only the "legislative acts of [a] member of Congress," but also the member's "motives for performing them." Second, it held that even though the Clause may not bar a particular prosecution altogether, it could preclude use of certain evidence. Johnson, a former Congressman, had been convicted of violating and conspiring to violate the federal conflict-of-interest statute by his efforts to influence the Department of Justice to dismiss an indictment against a loan company and its officers. *Id.* at 171. One part of that effort was his delivery of a speech on the House floor favorable to the loan company. *Id.* at 172. The Court found that proper application of the Clause required exclusion from trial of evidence relating to Johnson's floor speech, the manner of its preparation, and his motives for making it. *Id.* at 173-76. Certainly, the consideration of such evidence at trial amounted to "questioning" a member of Congress concerning a Speech or Debate in the member's House. The Court rejected the Government's argument that the Clause "was meant to prevent only prosecutions based upon the 'content' of speech, such as libel actions, but not those founded on 'the antecedent unlawful

conduct of accepting or agreeing to accept a bribe.'" *Id.* at 182 (quoting brief of the United States). It also rejected the contention that the Clause "was not violated because the gravamen of the count was the alleged conspiracy, not the speech." *Id.* at 184. Although affirming the Court of Appeals' reversal of the convictions, the Court remanded to permit a new trial at which the prohibited evidence would be excluded. *Id.* at 185. The Court refused to bar the prosecution altogether. In particular, in accord with *Kilbourn*'s view of the scope of the Clause, it would not construe the Clause to provide a privilege with respect to contacts with executive agencies. The Court wrote, "[T]he attempt to influence the Department of Justice . . . in no wise related to the due functioning of the legislative process." *Id.* at 172.

*Dombrowski v. Eastland*, 387 U.S. 82 (1967) (per curiam), reaffirmed *Kilbourn* in providing Speech or Debate Clause protection for issuance of congressional subpoenas—in that case, a subpoena "validated by subsequent Subcommittee ratification," *id.* at 84. The Court further stated that "legislators engaged in the sphere of legitimate legislative activity should be protected not only from the consequences of litigation's results but also from the burden of defending themselves." *Id.* at 85 (internal quotation marks and citation omitted). Counsel for the committee, however, was not protected by the Clause with respect to his actions preceding issuance of the subpoena. *Id.* He had allegedly

conspired with state officials to violate Dombrowski's civil rights in obtaining the records that were then subpoenaed by the committee.

Although *Powell v. McCormack*, 395 U.S. 486 (1969), is best remembered for holding that the House of Representatives improperly excluded Mr. Powell after his election in 1966, it also raised issues of Speech or Debate Clause immunity with respect to Members of the House and its employees. The Court determined that "[a]lthough this action should be dismissed against respondent Congressmen [for voting for exclusion], it may be sustained against their agents." *Id.* at 550. *But see id.* at 501-02 (stating that Court need address only whether the defendant House employees could be sued even if the Congressmen were protected). The Court rejected the defendant employees' attempt to distinguish the rulings against congressional employees in *Kilbourn* and *Dombrowski* on the grounds that the prior cases "concerned an affirmative act by the employee outside the House having a direct effect upon a private citizen," *id.*, at 504, and that they had involved suits for damages rather than the "assertedly greater interference with the legislative process" in *Powell*, in which the plaintiff sought disbursement of funds (salary) by the Sergeant at Arms, *id.* Otherwise, *Powell* does not appear to have broken any new ground with respect to Speech or Debate Clause protection.

The next Court opinion on the Clause, *United States v. Brewster*, 408 U.S.

-13-

501 (1972), is of particular importance to this case because of its elaboration on the meaning of "legislative acts." Brewster was a former Senator charged with accepting a bribe in exchange for promising to cast a particular vote. The Court overturned the dismissal of the indictment. It distinguished *Johnson* on the ground that there was "no need for the Government to show that [Brewster] fulfilled the alleged illegal bargain; acceptance of the bribe is the violation of the statute, not performance of the illegal promise." *Id.* at 526. It said that *Johnson* stands for the proposition "that a Member of Congress may be prosecuted under a criminal statute provided that the Government's case does not rely on legislative acts or the motivation for legislative acts." 408 U.S. at 512. It further explained: "A legislative act has consistently been defined as an act generally done in Congress in relation to the business before it. In sum, the Speech or Debate Clause prohibits inquiry only into those things generally said or done in the House or the Senate in the performance of official duties and into the motivation for those acts." *Id.*

The Court then pointed out that much of the work of Senators and Representatives does not qualify for protection:

> It is well known, of course, that Members of the Congress engage in many activities other than the purely legislative activities protected by the Speech or Debate Clause. These include a wide range of legitimate "errands" performed for constituents, the making of appointments with Government agencies, assistance in securing Government contracts, preparing so-called "news letters" to

-14-

> constituents, news releases, and speeches delivered outside the Congress.  The range of these related activities has grown over the years.  They are performed in part because they have come to be expected by constituents, and because they are a means of developing continuing support for future elections.  *Although these are entirely legitimate activities, they are political in nature rather than legislative*, *in the sense that term has been used by the Court in prior cases.*  But it has never been seriously contended that these political matters, however appropriate, have the protection afforded by the Speech or Debate Clause.

*Id.* (emphasis added).

The Court refused to accept what it considered an overly expansive construction of the Speech or Debate Clause.  It adopted the approach of Justice Brandeis for the Court in *Long v. Ansell*, 293 U.S. 76 (1934).  *Long* had rejected a broad interpretation of the congressional immunity from arrest provided by Article I, Section 6, because that Clause's "language is exact and leaves no room for a construction which would extend the privilege beyond the terms of the grant," *id.* at 82 (quoted by *Brewster,* 408 U.S. at 521).

Thus, *Brewster* rejected the view that the Clause protects "all conduct 'related to the due functioning of the legislative process.'"  *Brewster*, 408 U.S. at 513 (quoting *Johnson*, 383 U.S. at 172).  The Court said that Senator Brewster had read out of context the passage quoted from *Johnson* and that *Johnson* actually had held "that only acts generally done in the course of the process of enacting legislation were protected."  *Brewster*, 408 U.S. at 514.  Contrary to Senator Brewster's argument, "[i]n no case has this Court ever treated the Clause

-15-

as protecting all conduct *relating* to the legislative process. In every case thus far before this Court, the Speech or Debate Clause has been limited to an act which was clearly a part of the legislative process—the *due* functioning of the process." *Id*. at 515-16 (footnotes omitted). The Court concluded its rejection of a "related-to" reading by pointing out the dangers of an excessive expansion of Speech or Debate Clause immunity:

> We would not think it sound or wise, simply out of an abundance of caution to doubly insure legislative independence, to extend the privilege beyond its intended scope, its literal language, and its history, to include all things in any way related to the legislative process. Given such a sweeping reading, we have no doubt that there are few activities in which a legislator engages that he would be unable somehow to "relate" to the legislative process. Admittedly, the Speech or Debate Clause must be read broadly to effectuate its purpose of protecting the independence of the Legislative Branch, but no more than the statutes we apply, was its purpose to make Members of Congress super-citizens, immune from criminal responsibility.

*Id.* at 516.

On the same day as *Brewster*, the Court also decided *Gravel v. United States,* 408 U.S. 606 (1972), in which it considered the Speech or Debate Clause in the context of Senator Gravel's disclosure of the Pentagon Papers. The Court took the opportunity to explain the circumstances in which members of Congress are protected by the Clause with respect to acts by their aides. It did not, however, clearly expand protection in any other dimension.

The case arose out of a subpoena to Senator Gravel's aide, Leonard S.

Rodberg, issued by a federal grand jury investigating possible criminal misconduct associated with public release of the documents. One evening Senator Gravel had convened a meeting of a Senate subcommittee he chaired, where he read portions of the Pentagon Papers and placed all 47 volumes in the public record. Rodberg had been added to the Senator's staff earlier that day and had assisted in the preparation and conduct of the hearing. A number of days after the hearing, press reports indicated that Senator Gravel had arranged for a private company to publish the papers. *Id.* at 608-10.

The Court thought it "incontrovertible" that the Senator could not be questioned about events at the subcommittee hearing. *Id*. at 615. It then extended that protection to Rodberg's involvement, stating that "the Speech or Debate Clause applies not only to a Member but also to his aides insofar as the conduct of the latter would be a protected legislative act if performed by the Member himself." *Id.* at 618. It explained that such aides must be treated as alter egos of the Member because "the day-to-day work of such aides is so critical to the Members' performance." *Id.* at 616-17. It being "literally impossible, in view of the complexities of the modern legislative process, with Congress almost constantly in session and matters of legislative concern constantly proliferating, for Members of Congress to perform their legislative tasks without the help of aides and assistants," *id*. at 616, it follows that to deny the aides' acts the

protection of the Clause would "inevitably . . . diminish[] and frustrate[]" the "central role of the . . . Clause—to prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary," *id.* at 617. The privilege, however, belongs to the Senator, who can waive an aide's claim of protection. *See id.* at 622 n.13. One could say that the aide's actions are treated, for sound reasons of policy, as the functional equivalent of actions by the member of Congress.

The Court discussed at some length its earlier decisions in *Kilbourn*, *Dombrowski*, and *Powell*, in which members of Congress were held to be protected by the Speech or Debate Clause while their aides were nevertheless subject to liability. The Court found those cases distinguishable because the aides had not performed legislative acts. The discussion provides a further gloss on the Court's view of what actions are "legislative" and thus protected by the Clause. The Court wrote:

> The three cases reflect a decidedly jaundiced view towards extending the Clause so as to privilege illegal or unconstitutional conduct beyond that essential to foreclose executive control of legislative speech or debate and associated matters such as voting and committee reports and proceedings. In *Kilbourn*, the Sergeant-at-Arms was executing a legislative order, the issuance of which fell within the Speech or Debate Clause; in [*Dombrowski*], *the committee counsel was gathering information for a hearing*; and in *Powell*, the Clerk and Doorkeeper were merely carrying out directions that were protected by the Speech or Debate Clause. In each case, protecting the rights of others may have to some extent frustrated a planned or completed legislative act; but *relief could be afforded without proof*

*of a legislative act* or the motives or purposes underlying such an act. No threat to legislative independence was posed, and Speech or Debate Clause protection did not attach.

*Id.* at 620-21 (emphasis added). We emphasize that the Court viewed "gathering information for a hearing" in *Dombrowski* as not being a legislative act.

The Court further explained the meaning of "legislative act" in holding that the Speech or Debate Clause afforded no protection with respect to arrangements for private publication of the Pentagon Papers. *Id.* at 622. Relying on English precedents, the Court extended the Clause's protection of republications only so far as official committee reports. *Id.* at 623-24. The Court said that "private publication . . . was in no way essential to the deliberations of the Senate; nor does questioning as to private publication threaten the integrity or independence of the Senate by impermissibly exposing its deliberations to executive influence." *Id.* at 625. Also, it appeared that "neither Congress nor the full committee ordered or authorized the publication." *Id.* at 626. The Court said that it could not "but conclude that the Senator's arrangements with [the private publisher] were not part and parcel of the legislative process." *Id.*

More broadly, said the Court: "That Senators generally perform certain acts in their official capacity as Senators does not necessarily make all such acts legislative in nature." *Id.* at 625. It elaborated:

Legislative acts are not all-encompassing. *The heart of the Clause is speech or debate in either House. Insofar as the Clause is*

-19-

*construed to reach other matters, they must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.* As the Court of Appeals put it, the courts have extended the privilege to matters beyond pure speech or debate in either House, but only when necessary to prevent indirect impairment of such deliberations.

*Id.* (internal quotation marks and citation omitted) (emphasis added).

Based on these general principles, the Court held that no "constitutional or other privilege . . . shields Rodberg, any more than any other witness, from grand jury questions relevant to tracing the source of obviously highly classified documents that came into the Senator's possession and are the basic subject matter of inquiry in this case, as long as no legislative act is implicated by the questions." *Id.* at 628. Then it held that a protective order

would afford ample protection for the [Speech or Debate Clause] privilege if it forbade questioning any witness, including Rodberg: (1) concerning the Senator's conduct, or the conduct of his aides, at the June 29, 1971, meeting of the subcommittee; (2) concerning the motives and purposes behind the Senator's conduct, or that of his aides, at that meeting; (3) concerning communications between the Senator and his aides during the term of their employment and related to said meeting or any other legislative act of the Senator; (4) except as it proves relevant to investigating possible third-party crime, concerning any act, in itself not criminal, performed by the Senator, or by his aides in the course of their employment, in preparation for the subcommittee hearing.

*Id.* at 628-29 (footnote omitted).

Strangely, the Court did not state that all this protection was required—it

-20-

just said that the order would provide "ample protection." *Id.* at 628. This peculiar language may have been appropriate because some of the limitations in the order could be justified on grounds other than the Speech or Debate Clause—for example, a grand jury's authority is generally limited to investigating only *crime*—and those other grounds provided, in the context of that case, at least as much protection as the Clause in certain areas.

Further hampering an understanding of the reach of the Clause under *Gravel* is the uncertainty regarding the scope of the protection with respect to all noncriminal acts performed by the Senator's aides "in the course of their employment, in preparation for the subcommittee hearing," *id.* at 629. This protection is not explored in the opinion. In particular, the scope of "preparation" for a hearing, which could include virtually any work by an aide, is left unspecified. Perhaps such specificity was unnecessary in that case because Rodberg had been an aide for only a few hours before the hearing. In any event, despite *Gravel*'s expansive construction of the Clause to protect certain activity of congressional aides, it still confined protection to activity closely and directly tied to the conduct of official legislative business.

In *Doe v. McMillan*, 412 U.S. 306 (1973), the Court considered a suit by persons allegedly defamed by a committee report publicly disseminated by the Government Printing Office. The Court held that the Speech or Debate Clause

barred the claim "insofar as it sought relief from the Congressmen-Committee members, from the Committee staff, from the consultant, or from the investigator, for introducing material at Committee hearings that identified particular individuals, for referring the report that included the material to the Speaker of the House, and for voting for publication of the report." *Id.* at 312. Distribution of the report within Congress itself was also protected. *See id.* The necessity or relevance of disclosure in the report of the allegedly defamatory matter was not a proper subject of inquiry under the Clause. *See id.* at 312-13. At the same time, however, the Court held that the Clause "does [not] immunize those who publish and distribute otherwise actionable materials beyond the reasonable requirements of the legislative function." *Id.* at 315-16. Although the Court indicated that perhaps a showing could be made that some public dissemination of the materials might have been necessary "in order [for Congress] to perform its legislative function," *id.* at 317—in which case the dissemination would be protected by the Speech or Debate Clause—it failed to provide specific guidance on how to resolve the matter on remand.

In *Eastland v. United States Servicemen's Fund*, 421 U.S. 491 (1975), the Court clarified that the Speech or Debate Clause protects not only votes to authorize committee investigations but also issuance of subpoenas in the exercise of that authorization. *Id.* at 505. The Court wrote that "[i]n determining whether

particular activities other than literal speech or debate fall within the 'legitimate legislative sphere' we look to see whether the activities took place 'in a session of the House by one of its members in relation to the business before it.'" *Id.* at 503 (quoting *Kilbourn*, 103 U.S. at 204). "The power to investigate and to do so through compulsory process plainly falls within [*Gravel*'s] definition [of the legitimate legislative sphere]." *Id.* at 504. "[T]he power to investigate is inherent in the power to make laws." *Id.* The "investigation at issue [was] related to and in furtherance of a legitimate task of Congress." *Id.* at 505. Not only were the Committee members immune from suit, but so was the Committee's Chief Counsel. *See id.* at 507.

*United States v. Helstoski*, 442 U.S. 477 (1979), removed any doubt that evidence of legislative acts cannot be introduced into evidence for *any* purpose. Former Congressman Helstoski was prosecuted for allegedly accepting bribes in return for promising to introduce private bills granting resident status to aliens. The issue was the extent to which the Speech or Debate Clause required exclusion of evidence the Government sought to offer during trial. The Government "contend[ed ]that the Speech or Debate Clause does not bar the introduction of all evidence referring to legislative acts . . . [and] argue[d] that the Clause does not prohibit it from introducing evidence of discussions and correspondence which describe and refer to legislative acts if the discussions and correspondence did not

-23-

occur during the legislative process." *Id.* at 486. The Government said that it "s[ought] to introduce such evidence to show Helstoski's motive for taking money, not to show his motive for introducing the bills." *Id.* Following *Johnson* and *Brewster*, the Court largely rejected the Government's argument, stating that those precedents "leave no doubt that evidence of a legislative act of a Member may not be introduced by the Government." *Id.* at 487. It reiterated that "[t]he Clause protects 'against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts.'" *Id.* at 489 (quoting *Brewster*, 408 U.S. at 525). It noted, however, that "[a] promise to deliver a speech, to vote, or to solicit other votes at some future date is not 'speech or debate,' [nor is] a *promise* to introduce a bill . . . a legislative act." *Id.* at 490.

The most recent Supreme Court opinion on the Speech or Debate Clause was handed down a quarter-century ago. In *Hutchinson v. Proxmire*, 443 U.S. 111 (1979), the source of Senator Proxmire's problem was not alleged criminality but an allegedly libelous attempt at humor. The Senator's Golden Fleece Award publicized expenditures of taxpayer money he considered wasteful. Plaintiff Hutchinson received the award for his research on anger in animals. Senator Proxmire entered his comments in the Congressional Record and then referred to the award in newsletters to his constituents and others. In addition, he referred to the research in a television interview, and his aide contacted federal agencies that

had supported the research. *See id.* at 114-17.

The Court denied Senator Proxmire the protection he sought under the Speech or Debate Clause: "A speech by Proxmire in the Senate would be wholly immune and would be available to other Members of Congress and the public in the Congressional Record. But neither the newsletters nor the press release was 'essential to the deliberations of the Senate' and neither was part of the deliberative process." *Id.* at 130. The Court acknowledged that it had given the Speech or Debate Clause "a practical rather than a strictly literal reading which would limit the protection to utterances made within the four walls of either Chamber. Thus, we have held that committee hearings are protected, even if held outside the Chambers; committee reports are also protected." *Id.* at 124. But, it continued, "[t]he gloss going beyond a strictly literal reading . . . has not . . . departed from the objective of protecting only legislative activities." *Id.* at 125. The Clause reaches only matters that are "'*an integral part of the deliberative and communicative processes* by which Members participate *in committee and House proceedings* with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.'" *Id.* at 126 (quoting *Gravel*, 408 U.S. at 625). This view conforms to that of Justice Joseph Story, who wrote: "[T]his privilege is strictly confined to things done in the course of parliamentary proceedings, and

does not cover things done beyond the place and limits of duty." J. Story, Commentaries on the Constitution § 863 at 329 (1st ed. 1833) (Story) (quoted by *Proxmire*, 443 U.S. at 126).

Even accepting Senator Proxmire's contention that newsletters and press releases "exert some influence on other votes in the Congress and therefore have a relationship to the legislative and deliberative process," *id.* at 131, the Court said such a relationship was insufficient to trigger Speech or Debate Clause protection. It noted that in *Brewster* it "had carefully distinguished between what is only 'related to the due functioning of the legislative process,' and what constitutes the legislative process entitled to immunity under the Clause." *Id.* (quoting *Brewster*, 408 U.S. at 512). Although Congress's informing itself through hearings is a legislative function protected by the Clause, "the transmittal of such information by individual Members in order to inform the public and other Members is not a part of the legislative function or the deliberations that make up the legislative process." *Id.* at 133. "Newsletters and press releases . . . are primarily means of informing those outside the legislative forum; they represent the views and will of a single Member. It does not disparage either their value or their importance to hold that they are not entitled to the protection of the Speech or Debate Clause." *Id.* Of particular relevance here, the Court distinguished Proxmire's actions from "congressional efforts to inform itself *through committee hearings*[, which] are

part of the legislative function." *Id.* at 132-33 (emphasis added).

This survey of Supreme Court opinions reveals several continuing themes in the interpretation of the mandate, "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." U.S. Const. art. I, § 6, ¶ 1. First, in light of the history and undoubted purpose of the Clause, the words "Speech or Debate" have been read broadly to encompass all formal actions in the official business of Congress, including voting, conducting hearings, issuing reports, and issuing subpoenas. *See, e.g.*, *Kilbourn*, *Tenney*, *Powell*, *Gravel*, *Doe*, and *United States Servicemen's Fund*.

Second, in recognition of the needs of a large and overburdened legislative body, the Court has extended the meaning of some terms in the Clause to include their functional equivalents. Thus, "Senators and Representatives" includes aides who function as their alter egos in performing legislative acts. *See Gravel*, 408 U.S. at 616-17; *Doe*, 412 U.S. at 312; *United States Servicemen's Fund*, 421 U.S. at 507. And committee hearings are deemed "in" the House even when conducted far away. *See Proxmire*, 443 U.S. at 124.

Third, an act is "questioned" not only if it is the subject of civil or criminal prosecution but even if evidence of the act is offered at a trial. *See Johnson*, *Helstoski*.

Fourth, and most important for this appeal, the above "broad" constructions

of the Speech or Debate Clause have always been confined within the limits of formal, official proceedings. This limitation has been recognized from *Kilbourn*, 103 U.S. at 204 (describing object of Clause as "things generally done in a session of the House by one of its member in relation to the business before it") to *Johnson*, 383 U.S. at 172 (attempts to influence executive agency are outside Clause's scope) to *Brewster*, 408 U.S. at 512 (the "Clause prohibits inquiry only into those things generally said or done in the House or Senate in the performance of official duties and into the motivation for those acts"), to *Gravel*, 408 U.S. at 625 ("[i]nsofar as the Clause is construed to reach other matters [than speech or debate in either House], they must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House"), and to *Proxmire*, 443 U.S. at 126 ("this privilege is strictly confined to things done in the course of parliamentary proceedings, and does not cover things done beyond the place and limits of duty" (quoting Story)). The expression summarizing this proposition is that the Clause protects only "legislative," not "political," acts. *See Brewster*, 408 U.S. at 512.

We now turn to the specifics of the case before us.

**IV.    Application to this Case**

As we understand the Supreme Court's jurisprudence on the Speech or Debate Clause, the immunity issue before us turns on whether Plaintiff's lawsuit questions "legislative" action by Senator Campbell or Plaintiff. In our view, it does not.

First, the alleged discriminatory acts by the Senator were not legislative acts. No official Senate action, such as a vote or a subpoena, was involved. None of the Senator's alleged misconduct took place "in either House" of Congress, either literally or constructively (as might be the case when a subcommittee conducts hearings in the hinterlands).

Indeed, even if there had been a legislative act—say, a committee resolution—directing a discriminatory action against Plaintiff, only the vote itself would be protected by the Speech or Debate Clause. Plaintiff could still pursue a claim for being removed from the payroll or being mistreated by supervisors. In *Powell* the House of Representatives in effect fired a member of its own body. Those who voted to exclude Powell were protected by the Speech or Debate Clause. But its agents—including those who handled payrolls—were subject to suit. Thus, in the case before us, Defendant—the Office of Senator Campbell—could be liable for a discriminatory action against Plaintiff even if the action was authorized or directed by immunized legislative votes.

Second, Plaintiff's discrimination claim does not require proof of any

legislative act by Senator Campbell or any member of his staff. Defendant has not pointed to, or even suggested, that Plaintiff would need to prove that Senator Campbell cast a particular vote, subpoenaed a witness, or took part in any other official Senate or Senate committee action. What Defendant does suggest is that meetings with constituents or other members of the public—either by the Senator himself or by his aides—are legislative acts to the extent that information is gathered that could affect his votes or his efforts to craft proposed legislation. In support of this position Defendant cites language in the Supreme Court's decisions in *Doe*, *United States Servicemen's Fund*, and *Proxmire*, stating that gathering information was a legislative act. In each of these cases, however, the information gathering being addressed was in the course of formal committee action, when the committee had subpoenaed witnesses or disclosed information during a hearing. No Supreme Court opinion indicates that Speech or Debate Clause immunity extends to informal information gathering by individual members of Congress. On the contrary, *Gravel* summarized the nonimmunized civil complaint against the committee counsel in *Dombrowski* as "charg[ing] [him] with conspiring with state officials to carry out an illegal seizure of records that the Committee sought for its own proceedings," *Gravel*, 408 U.S. at 619—surely an information-gathering function. *Gravel* explained that even though "the committee counsel was gathering information for a hearing[,] . . . relief could be afforded [to those suing

-30-

the counsel] without proof of a legislative act or the motives or purposes underlying such an act." *Id.* at 620-21. The Court's discussions in its opinions of the importance of information gathering is for the purpose of establishing that such activity is a proper congressional function and, when conducted by a committee, should be treated just as voting and debating legislation. To extend protection to informal information gathering—either personally by a member of Congress or by congressional aides—would be the equivalent of extending Speech or Debate Clause immunity to debates before local radio stations or Rotary Clubs.

The only potential support for Defendant's views on this matter that we can find in the Supreme Court's opinions is the statement in *Gravel* that a protective order "would afford ample protection for the [Speech or Debate Clause] privilege if it forbade questioning any witness . . . concerning any act, in itself not criminal, performed by the Senator, or by his aides in the course of their employment, *in preparation for the subcommittee hearing*." 408 U.S. at 628-29 (emphasis added). Perhaps the Court is saying that information gathering targeted to a specific hearing is activity privileged under the Clause. But the Court failed to expand on the matter, and other language in *Gravel*, particularly the discussion of *Dombrowski* summarized above, strongly suggests otherwise. The issue was not clearly presented in *Gravel* because the staff member who acquired the information—the Pentagon Papers—had only been hired on the day of the hearing.

In any event, the unexplained statement in *Gravel* is insufficient ground for us to stretch the meaning of "Speech or Debate in either House" to include the everyday task of gathering views and information from constituents and others through informal contacts.

Aside from reliance on the Speech or Debate opinions of the Supreme Court, Defendant also points to the immunity granted the President. In *Nixon v. Fitzgerald*, 457 U.S. 731(1982), the Supreme Court recognized "absolute Presidential immunity from damages liability for acts within the 'outer perimeter' of his official responsibility." *Id.* at 756. Fitzgerald had been terminated from his Air Force position "in the context of a departmental reorganization and reduction in force, in which the job was eliminated." *Id.* at 733-34. He alleged that the reorganization was a ruse and that he was actually terminated in retaliation for his truthful testimony before a congressional committee. *See id.* at 736. Holding that the President had "the authority to prescribe reorganizations and reductions in force" within the Air Force, the Court "conclude[d] that [the President's] alleged wrongful acts lay well within the outer perimeter of his authority." *Id.* at 757.

*Fitzgerald* hardly compels a conclusion that members of Congress have an absolute immunity from similar suits by their staff assistants. It is not enough to argue that if the head of one of the three branches of government has absolute immunity in personnel matters, then so do the heads of a coequal branch. To be

-32-

sure, any imposition of liability on a public official may impair that official's performance of official duties; lawsuits by former employees can consume time and energy, and the prospect of such suits may deter the official from discharging an employee whose incompetence diminishes the official's own efficiency and effectiveness. But *Fitzgerald* made clear that determining whether to recognize an absolute immunity requires balancing such interests against the interests of those who have been wronged. *See id.* at 744-48. And recognition of the President's absolute immunity derived from "[t]he President's *unique* status under the Constitution." *Id.* at 750 (emphasis added). The Court said that "[b]ecause of the singular importance of the President's duties, diversion of his energies by concern with private lawsuits would raise unique risks to the effective functioning of government," *id.* at 751, and "the sheer prominence of the President's office" makes him "an easily identifiable target for suits for civil damages," *id.* at 752-53. Surely these considerations also weigh heavily in the context of high ranking executive officials, such as governors and cabinet officers; but the Court viewed decisions giving such officials only a qualified immunity "to be inapposite." *Id.* at 750.

Prominent as members of Congress are, the threat to the performance of their duties arising from employment litigation is nothing like what would confront the President. It is worth observing that the third branch of government, the

judiciary, is not entitled to absolute immunity in making employment decisions. *See Forrester v. White*, 484 U.S. 219 (1988). Moreover, Congress itself, at least in 1995, apparently did not believe it required such protection. It limited the reach of the CAA only insofar as the Speech or Debate Clause provided immunity, and the case law at that time hardly provided much ground for reliance on the Clause in the personnel arena. A truly concerned Congress would likely have enacted a specific protection in the CAA. Defendant would have a stronger argument if the cause of action here were not one created by Congress. Indeed, the absolute-privilege holding in *Fitzgerald* was limited to "'implied' causes of action [and did] not address directly the immunity question as it would arise if Congress expressly had created a damages action against the President . . . ." *Fitzgerald*, 457 U.S. at 748 n.27.

In any event, Defendant relies solely on the Speech or Debate Clause itself. And whatever the strength of policy arguments for granting members of Congress the same absolute immunity afforded the President, we are restricted to what the language of the Clause will bear. Instructive in this regard is Justice Brandeis's opinion for the Court in *Long v. Ansell*, 293 U.S. 76 (1934). At issue was the meaning of the clause immediately preceding the Speech or Debate Clause: "[The Senators and Representatives] shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the

Session of their respective Houses, and in going to and returning from the same[.]"
U.S. Const. art. I, § 6, ¶ 1.

Senator Huey Long had been sued for libel in the District of Columbia, and a summons to answer the complaint was served on him in the District during a congressional session. The Court rejected Long's argument that the constitutional protection against arrests encompasses immunity from such a summons while he was conducting the public's business in Congress. Justice Brandeis wrote that the language of the constitutional provision protecting members of Congress from arrest "is exact and leaves no room for a construction which would extend the privilege beyond the terms of the grant." 293 U.S. at 82. Likewise, we decline to read a congressional equivalent of the *Fitzgerald* privilege into the Speech or Debate Clause.

Finally, Defendant relies on *Browning v. Clerk*, 789 F.2d 923 (D.C. Cir. 1986), the one appellate opinion dismissing an employment claim because of Speech or Debate Clause immunity. The court in that case dismissed a complaint alleging racial discrimination filed by a woman fired from her position as an official reporter of the House of Representatives. The court stated that "[t]he touchstone to determining whether the Speech or Debate Clause immunity attaches is whether the activities at issue were 'an integral part of the deliberative and communicative processes [of Congress],' *Gravel*, 408 U.S. at 625, such that the

activity is legislative in character." *Id.* at 928. This observation is not controversial, coming from *Gravel*'s statement that for activities other than "speech or debate in either House" to be legislative acts, "they must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Gravel*, 408 U.S. at 625.

*Browning* went one step further, however, in stating, "[p]ersonnel decisions are an integral part of the legislative process to the same extent that the affected employee's duties are an integral part of the legislative process. Thus, if the employee's duties are an integral part of the legislative process, such that they are directly assisting members of Congress in the 'discharge of their functions,' personnel decisions affecting them are correspondingly legislative and shielded from judicial scrutiny." *Browning*, 789 F.2d at 928-29 (citation omitted).

We hesitate to embrace this test. A personnel decision is not a "legislative act," as defined by the Supreme Court, and is therefore not entitled to immunity. The Speech or Debate Clause therefore provides protection only if legislative acts must be proved to establish the claim challenging the personnel action. *See, e.g., Helstoski*, 442 U.S. at 487-89. Perhaps the *Browning* test is simply another way of

describing this protection. After all, in *Browning* the official reporter's performance could be established only by comparing her output to what was actually said during a committee meeting. Thus, litigation of her claim would have required examination of legislative acts. *See Browning,* 789 F.2d at 930. In any event, even under the *Browning* formulation, Plaintiff here prevails, because her job duties do not satisfy the *Gravel* standard for a legislative act. Her discussions with constituents and others were not "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings." *Gravel*, 408 U.S. at 625. The "communicative processes" referred to in *Gravel* are only those within Congress itself.

## V.    Conclusion

We hold that Plaintiff's cause of action under the CAA is not barred by the Speech or Debate Clause. We REVERSE the dismissal by the district court and REMAND for further proceedings consistent with this opinion.